# Illinois Official Reports

## Supreme Court

---

### *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129

---

| | |
|---|---|
| Caption in Supreme Court: | COMMONWEALTH EDISON COMPANY *et al*., Appellees, v. ILLINOIS COMMERCE COMMISSION *et al*. (Illinois Competitive Energy Association *et al*., Appellants). |
| Docket No. | 118129 |
| Filed | May 19, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on petition for review from orders of the Illinois Commerce Commission. |
| Judgment | Appeal dismissed.<br>Appellate court judgment vacated. |
| Counsel on Appeal | J. Timothy Eaton, John F. Kennedy and Jonathan B. Amarilio, of Taft Stettinius & Hollister LLP, of Chicago, and Eric Robertson, of Lueders Robertson and Konzen, of Granite City, for appellants. |
| | Barry Levenstam, of Jenner & Block LLP, of Chicago, and Matthew E. Price, of Jenner & Block LLP, of Washington, DC, for appellee Commonwealth Edison Company. |
| | John P. Kelliher and Thomas R. Stanton, Special Assistant Attorneys General, of Chicago, for appellee Illinois Commerce Commission. |

Husch Blackwell LLP (Douglas F. McMeyer, of Chicago, and Kyle C. Barry and JoAnn T. Sandifer, of St. Louis, Missouri, of counsel), for appellee FutureGen Industrial Alliance, Inc.

Christopher J. Townsend, Christopher N. Skey, and Adam T. Margolin, of Quarles & Brady LLP, of Chicago, for *amicus curiae* The Coalition of Energy Suppliers.

Richard J. Prendergast and John C. Ellis, of Chicago, for *amicus curiae* The Commercial Group.

Justices      JUSTICE KILBRIDE delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      The subject of this case is the FutureGen 2.0 "clean coal" project in Illinois. The issue brought before this court is whether the Illinois Commerce Commission (the Commission) has the authority to require Commonwealth Edison and Ameren, the two largest utility companies in Illinois, to negotiate energy procurement from the FutureGen 2.0 power plant on behalf of themselves as well as the state's smaller Area Retail Electric Suppliers (ARES). After we allowed the petition for leave to appeal, federal funding for the FutureGen 2.0 project was suspended, project development efforts were ceased, and the sourcing agreements that are the subject of this appeal were terminated. We dismiss this appeal as moot and vacate the judgment of the appellate court without expressing an opinion on the merits of the appellate court opinion.

¶ 2                               BACKGROUND

¶ 3      FutureGen Industrial Alliance, Inc. (FutureGen Alliance) was created to research and develop near-zero emissions coal technology and sought to use carbon capture and storage to develop the world's first near-zero emissions coal power plant. The proposed retrofitted "clean coal" electric energy generating facility, known as "FutureGen 2.0," was to be located in Meredosia, Illinois, and scheduled to begin operating in 2017.

¶ 4      In an effort to secure private investment for FutureGen 2.0, the Commission issued an order finding that it has the authority to force public utility companies and privately owned and competitively operated ARES to purchase all of FutureGen 2.0's electrical output over a 20-year term. The Illinois Competitive Energy Association and Illinois Industrial Energy Consumers challenged the Commission's authority to force ARES to enter into sourcing

- 2 -

agreements. On appeal, the appellate court affirmed the order of the Commission. 2014 IL App (1st) 130544. This court allowed the petition for leave to appeal of the Illinois Competitive Energy Association and Illinois Industrial Energy Consumers pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2013).

¶ 5    In February 2015, while the appeal was pending before this court, the United States Department of Energy suspended funding for the FutureGen 2.0 project. This court then issued an order directing the parties to file additional briefs addressing the issue of mootness and, later, issued an order that the parties file reports concerning the status of the FutureGen 2.0 project.

¶ 6    FutureGen Alliance filed a supplemental brief informing this court that it had exhausted all administrative and legislative remedies available for restoring federal funding for the FutureGen 2.0 project. Consequently, the FutureGen Alliance board of directors approved a resolution in January 2016 ceasing all FutureGen 2.0 project development efforts. FutureGen Alliance's supplemental brief also indicated its intention to terminate the sourcing agreements that are the subject of this appeal.

¶ 7    The Commission, FutureGen Alliance, and Commonwealth Edison filed a joint status report. The joint status report informed the court that the sourcing agreements that are the subject of this appeal were terminated and the appeal is now moot.

¶ 8    Appellants, Illinois Competitive Energy Association and Illinois Industrial Energy Consumers, filed their status report, agreeing that this appeal is now moot. However, appellants ask this court to address the substantive issues under the public interest exception to the mootness doctrine.

¶ 9                                     ANALYSIS

¶ 10    An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief. *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005). "As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). "This court will not review cases merely to establish a precedent or guide future litigation." *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235 (1982). When a decision on the merits would not result in appropriate relief, such a decision would essentially be an advisory opinion. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997).

¶ 11    Here, after federal funding of the FutureGen 2.0 project was suspended, FutureGen Alliance ceased all FutureGen 2.0 project development efforts, and the sourcing agreements that are the subject of this appeal were terminated. Thus, events have occurred that make it impossible for this court to grant effectual relief, rendering this appeal moot.

¶ 12    Despite agreeing that this appeal is now moot, appellants argue that this court should consider the issues raised in this appeal pursuant to the public interest exception to the mootness doctrine. The public interest exception to the mootness doctrine permits review of an otherwise moot question when the magnitude or immediacy of the interests involved warrants action by the court. See *In re Shelby R.*, 2013 IL 114994, ¶ 16. The public interest exception to the mootness doctrine applies only when "(1) the question presented is of a public nature; (2)

an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *In re Shelby R.*, 2013 IL 114994, ¶ 16.

¶ 13 The public interest exception is narrowly construed and requires a clear showing of each of its criteria. *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007). If any one of the criteria is not established, the exception may not be invoked. *In re Commitment of Hernandez*, 239 Ill. 2d 195, 202 (2010). Indeed, the public interest exception is invoked only on "rare occasions" when there is an extraordinary degree of public interest and concern. *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 410 (1990) (citing *People ex rel. Cairo Turf Club, Inc. v. Taylor*, 2 Ill. 2d 160, 164 (1954), and *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 380 (1954)). In this case, none of the criteria was established.

¶ 14 We begin by considering the first requirement for the public interest exception to the mootness doctrine to apply, whether "the question presented is of a public nature." *In re Shelby R.*, 2013 IL 114994, ¶ 16. The question presented in this appeal would have incidentally affected Illinois electric energy consumers who would ultimately have paid higher utility rates as a result of the sourcing agreements. Undoubtedly, Illinois electric energy consumers have an interest in affordable utility rates. Nevertheless, the issue in this case uniquely applies only to a specific group of regulated entities for a specific project. FutureGen 2.0, if it had succeeded, would have been the world's first near-zero emissions coal power plant. Development of the FutureGen 2.0 project, however, has ceased. The sourcing agreements relating to the FutureGen 2.0 project were terminated. Because of the unique character of this project, any public nature of the question presented in this appeal ceased to exist with the termination of the FutureGen 2.0 project. We therefore determine that this case does not present a question of a public nature. Accordingly, the first criterion is not met for application of the public interest exception to the mootness doctrine.

¶ 15 The second requirement for the public interest exception to the mootness doctrine to apply is that "an authoritative determination of the question is desirable for the future guidance of public officers." *In re Shelby R.*, 2013 IL 114994, ¶ 16. This court "does not review cases merely to set precedent or guide future litigation." *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997). As this court recognized in *In re Alfred H.H.*:

> "If all that was required under this factor was that the opinion could be of value to future litigants, the factor would be so broad as to virtually eliminate the notion of mootness. Instead, the factor requires that the party asserting [justiciability] show that there is a 'need to make an authorative determination for future guidance of public officers.' " *In re Alfred H.H.*, 233 Ill. 2d 345, 357-58 (2009) (quoting *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999)).

¶ 16 In deciding the need for an authoritative determination, this court looks to whether the law is in disarray or conflicting precedent exists. See *In re Commitment of Hernandez*, 239 Ill. 2d at 202. When a case presents an issue of first impression, no conflict or disarray in the law exists. *In re Commitment of Hernandez*, 239 Ill. 2d at 203.

¶ 17 This case involves the Commission's first application of section 1-75(d)(5) of the Illinois Power Agency Act (Act) (20 ILCS 3855/1-75(d)(5) (West 2008)). Section 1-75(d)(5) specifically addresses sourcing agreements for retrofitted clean coal electric energy facilities. The parties agree that this case presents an issue of first impression. Because this appeal involves an issue of first impression, there is no conflicting precedent regarding the

Commission's authority to implement the retrofitted clean coal facility provisions of section 1-75(d)(5) of the Act, and the law is not in disarray. We conclude that the second criterion for application of the public interest exception, that an authoritative determination of the question is desirable for the future guidance of public officers, is not met in this case.

¶ 18 The third requirement for the public interest exception to the mootness doctrine to apply is that "the question is likely to recur." *In re Shelby R.*, 2013 IL 114994, ¶ 16. Appellants' argument on this factor consists of a bare claim that there is "nothing that prevents another retrofitted clean coal facility from invoking [the statute at issue] and proposing sourcing agreements to be included in a procurement plan."

¶ 19 As we have noted, this case involves the Commission's first application of section 1-75(d)(5). Section 1-75(d)(5) specifically addressed sourcing agreements for retrofitted clean coal electric energy facilities, and FutureGen 2.0 was to be the first such facility. According to the Commission's supplemental brief on the issue of mootness, no retrofitted clean coal facility invoked section 1-75(d)(5) before FutureGen 2.0, and none has invoked it since. Moreover, section 1-75(d)(5) is limited in its application to retrofitted clean coal facilities. 20 ILCS 3855/1-75(d)(5) (West 2008).

¶ 20 Appellants have made no showing of any probability or "substantial likelihood" that the issue will ever recur. See *In re Alfred H.H.*, 233 Ill. 2d at 358 (finding "there is no substantial likelihood that the material facts that give rise to respondent's *** claim are likely to recur either as to him or anyone else"). Appellants merely speculate that the question might recur. Due to the uniqueness of the FutureGen 2.0 project and the limited application of section 1-75(d)(5) to retrofitted clean coal facilities, we cannot say that this issue is likely, if ever, to recur. We determine that the third criteria for application of the public interest exception to the mootness doctrine is not met.

¶ 21 For the above reasons, we conclude that this case does not meet any of the criteria for review under the public interest exception to the mootness doctrine. Accordingly, this appeal must be dismissed as moot. *Felzak*, 226 Ill. 2d at 393 (the public interest exception requires a clear showing of each of its criteria).

¶ 22 Appellants alternatively ask this court to exercise its supervisory authority to vacate the appellate court opinion. Because this appeal is now moot, this court will not reach the merits of the issue presented. As such, this court is unable to pass on the correctness of the appellate court's opinion affirming the Commission's orders. Accordingly, we vacate the judgment of the appellate court without expressing any view on the merits of its opinion. See *Bartlow v. Costigan*, 2014 IL 115152, ¶ 54; *Felzak*, 226 Ill. 2d at 394; *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 77-78 (1986); *First National Bank of Waukegan v. Kusper*, 98 Ill. 2d 226, 236 (1983).

¶ 23 Appellants also ask this court to vacate portions of the Commission's orders declaring that the agency has authority to force ARES into sourcing agreements with third parties, for the same reasons advanced in its argument for vacatur of the appellate court opinion. Appellants acknowledge that the Commission's orders are nonprecedential. Appellants submit, however, that the Commission's orders may have the same practical effect as legal precedent. According to appellants, "[i]t is at least reasonable to assume that in the next instance where the Commission seeks to expand its regulatory power over ARES, it will point to its orders in this case as authority for such *ultra vires* power."

¶ 24     This court has long recognized that the Commission "is not a judicial body, and its orders are not *res judicata* in later proceedings before it." *Mississippi River Fuel Corp. v. Illinois Commerce Comm'n*, 1 Ill. 2d 509, 513 (1953). The Commission, as a regulatory body, has the "power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding." *Mississippi River Fuel Corp. v. Illinois Commerce Comm'n*, 1 Ill. 2d at 513; see also *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 125 (1995) (holding the Commission's past precedent of allowing full recovery of statutorily imposed operating expenses "is not controlling, because the Commission is a legislative and not a judicial body, and generally its decisions are not *res judicata* in later proceedings before it"); *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 22-23 (1994) (rejecting argument that the Commission is bound by its prior orders under the doctrine of *res judicata*).

¶ 25     Given the uniqueness of this case, it is uncertain whether the issues involved will ever recur. Even if they do recur, the Commission may deal with each situation as it comes before it, "regardless of how it may have dealt with a similar or even the same situation in a previous proceeding." *Mississippi River Fuel Corp.*, 1 Ill. 2d at 513. Accordingly, the Commission's orders are not preclusive, and it is unnecessary to vacate any portion of the Commission's orders.

¶ 26                          CONCLUSION

¶ 27     For the reasons stated, we dismiss this appeal as moot. We vacate the judgment of the appellate court without expressing an opinion on its merits.

¶ 28     Appeal dismissed.

¶ 29     Appellate court judgment vacated.